**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| JOSE M. G., | ) | No. CV 19-4900-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Jose M. G.[1] ("plaintiff") filed this action on June 5, 2019, seeking review of the Commissioner's[2] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on June 24, 2019, and July 9,

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

2019.  Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on July 17, 2020, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1966.  [Administrative Record ("AR") at 149, 389.]  He has no past relevant work experience.  [Id. at 149, 190.]

On July 16, 2015, plaintiff filed an application for SSI payments, alleging that he has been unable to work since August 1, 2009.  [Id. at 143; see also id. at 389-98.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 288-91.]  A hearing was held on November 22, 2017, at which time plaintiff appeared represented by an attorney and testified on his own behalf, with the assistance of an interpreter.  [Id. at 167-200.]  A vocational expert ("VE") also testified.  [Id. at 190-99.]  On February 28, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability since July 16, 2015, the date the application was filed.  [Id. at 143-51.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [Id. at 385-87.]  When the Appeals Council denied plaintiff's request for review on April 8, 2019 [id. at 1-8], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

1    only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

2    conclusion.'" <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations

3    omitted); <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible

4    to more than one rational interpretation, the ALJ's decision should be upheld." <u>Revels</u>, 874 F.3d

5    at 654 (internal quotation marks and citation omitted).  However, the Court "must consider the

6    entire record as a whole, weighing both the evidence that supports and the evidence that detracts

7    from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum

8    of supporting evidence." <u>Id.</u> (quoting <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014)

9    (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ

10   in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."

11   <u>Id.</u> (internal quotation marks and citation omitted); <u>see</u> <u>also</u> <u>SEC v. Chenery Corp.</u>, 318 U.S. 80,

12   87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must

13   be judged are those upon which the record discloses that its action was based.").

14

15                                              **IV.**

16                            <u>**THE EVALUATION OF DISABILITY**</u>

17          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

18   to engage in any substantial gainful activity owing to a physical or mental impairment that is

19   expected to result in death or which has lasted or is expected to last for a continuous period of

20   at least twelve months.  <u>Garcia v. Comm'r of Soc. Sec.</u>, 768 F.3d 925, 930 (9th Cir. 2014) (quoting

21   42 U.S.C. § 423(d)(1)(A)).

22

23   **A.      THE FIVE-STEP EVALUATION PROCESS**

24          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

25   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lounsbury v. Barnhart</u>, 468

26   F.3d 1111, 1114 (9th Cir. 2006) (citing <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

27   In the first step, the Commissioner must determine whether the claimant is currently engaged in

28   substantial gainful activity; if so, the claimant is not disabled and the claim is denied. <u>Lounsbury</u>,

468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsburry, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 16, 2015, the application date. [AR at 145.]  At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, and obesity.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id. at 146.]

1  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform

2  medium work as defined in 20 C.F.R. § 416.967(c),[4] as follows:

> [H]e can lift and carry fifty pounds occasionally and twenty five [sic] pounds frequently; he can push and pull to the same extent as the lift and carry limit; he can sit, stand and/or walk six hours each in an eight-hour workday, with normal breaks; he can occasionally climb ramps, stairs, ladders, ropes or scaffolds; he can occasionally kneel, crouch or crawl; and he can frequently balance or stoop.

6  [Id.] At step four, the ALJ concluded that plaintiff has no past relevant work.  [Id. at 149.]  At step

7  five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there

8  are jobs existing in significant numbers in the national economy that plaintiff can perform,

9  including work as a "laundry worker" (Dictionary of Occupational Titles ("DOT") No. 361.684-014),

10  as a "factory helper" (DOT No. 529.686-034), and as a "machine feeder" (DOT No. 699.686-010).

11  [AR at 150.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time since July

12  16, 2015, the date the application was filed.  [Id.]

14  **V.**

15  **THE ALJ'S DECISION**

16       Plaintiff contends that the ALJ erred when he:  (1) failed to properly consider the medical

17  opinions of M. Bijpuria, M.D.; and (2) discounted plaintiff's subjective symptom testimony.  [JS at

18  4.]  As set forth below, the Court agrees with plaintiff and remands for further proceedings.

19  /

20  /

---

22   [3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

25   [4]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires that a person be able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday.  Soc. Sec. Ruling 83-10; Candia v. Sullivan, 959 F.2d 239, 239 (9th Cir. 1992).  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

**A.      MEDICAL OPINIONS**

    **1.      Legal Standard**

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5]  The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012) (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it

---

[5]      The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 416.927c (not § 416.927) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 416.920c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 416.927 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician.  Trevizo, 871 F.3d at 676; see 20 C.F.R. § 416.927(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2.    Dr. Bijpuria

On September 29, 2017, Dr. Bijpuria completed a medical review of all of plaintiff's records to that date, including, but not limited to, the 2015 reviewing examiners' reports, the August 24, 2015, internal medicine consultative examination performed by Rocely Ella-Tamayo, M.D. [AR at 534-39], and the records of the treatment plaintiff received with Miguel Dominguez, M.D., a pain specialist, after those prior 2015 evaluations.  [JS at 5 (citing AR at 629-40).]  Based on his review, Dr. Bijpuria opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds [AR at 634]; sit, stand and/or walk about six hours in an eight-hour workday; occasionally climb ramps, balance, stoop, kneel, crouch, and crawl, and

1   never climb ladders, ropes, or scaffolds [id. at 635]; and should avoid concentrated exposure to

2   hazards such as dangerous machinery and heights.  [Id. at 637.]  Dr. Bijpuria acknowledged that

3   his opinions were significantly different from the 2015 findings of Dr. Ella-Tamayo, who found

4   plaintiff could carry 50 pounds occasionally and about 25 pounds frequently; stand and/or walk

5   six hours out of an eight-hour workday; sit for an unlimited amount of time; and kneel and squat

6   occasionally.  [Id. at 638.]  Dr. Bijpuria stated that the 2015 evaluation of Dr. Ella-Tamayo was not

7   persuasive as it was "based on [a] single evaluation" by a non-treating physician.  [Id. at 639.]

8            The ALJ reviewed the opinion evidence and stated the following:

9            I give greater weight to the [2015] opinions of the State Agency physicians at the
             initial and reconsideration levels and the consultative examiner, than to the [2017]
10           opinion of the State Agency medical consultant [Dr. Bijpuria].  I give greater weight
             to the opinions of the State Agency physicians at the initial and reconsideration
11           levels and the consultative examiner because a medium rather than light residual
             functional capacity assessment is more consistent with the objective findings
12           discussed above, including the generally unremarkable examination findings, the
             mild to moderate degenerative disc disease found on the imaging studies, and the
13           conservative and routine treatment.

14  [Id. at 148-49.]

15           Plaintiff contends that the ALJ's rationale for giving greater weight to the August 31, 2015,

16  and November 10, 2015, opinions of the State agency reviewing physicians on initial review and

17  on reconsideration, respectively, and to the August 24, 2015, opinions of Dr. Ella-Tamayo, the

18  internal medicine consultative examiner, does not "rise to the level of specific and legitimate that

19  is required," and is not supported by substantial evidence.  [JS at 5, 6.]  He states that although

20  some of the clinical findings were "unremarkable," a September 8, 2015, x-ray and November 2,

21  2015, MRI imaging ordered by Dr. Dominguez (and reviewed by Dr. Bijpuria but not by the State

22  agency reviewing physicians or by Dr. Ella-Tamayo who did not review any historical medical

23  records), revealed a diffusely bulging disc at L3-L4 extending posteriorly approximately 5 mm, with

24  bilateral foraminal narrowing and mild spinal stenosis; osteoarthritic spurring at L3 and L4, most

25  prominent at L4; a 5 mm diffusely bulging disc at L4-L5 with bilateral foraminal narrowing more

26  prominent on the right; and a 3 mm diffusely bulging disc at L5-S1 with right foraminal narrowing.

27  [Id. at 6 (citing AR at 754, 786).]  Plaintiff notes that the reviewing physicians determined in 2015

28  that plaintiff had mild-to-moderate degenerative disc disease, whereas Dr. Bijpuria -- who had

1  access to an additional two years of medical records -- determined plaintiff's disc disease was

2  "severe," and that plaintiff had functional limitations, "just not to the extent that [plaintiff] alleged."

3  [Id. (citing AR at 630, 638).] He contends that the ALJ's rejection of Dr. Bijpuria's report was error

4  because "significant evidence supporting Dr. Bijpuria's opinion existed that was not available to

5  the earlier non-examining physicians in their review." [Id.]

6       Plaintiff also argues that his treatment with epidural injections, medial branch blocks, and

7  narcotic medication, does not constitute conservative treatment. [Id. (citing Garrison, 759 F.3d

8  at 1015 n.20).]

9       Plaintiff further contends that because of his age, education, and English-speaking ability

10 (about which the ALJ failed to make a finding), Dr. Bijpuria's opinion limiting plaintiff to light work

11 would result in a finding that plaintiff was disabled under the Grid rules. [Id. at 7.] Plaintiff takes

12 issue with the ALJ's failure to make a finding regarding plaintiff's English abilities, based on the

13 ALJ's determination that the record was ambiguous with respect to plaintiff's ability to understand

14 or speak English, and the fact that the ALJ found that plaintiff's "ability to communicate in English

15 or English literacy is not material to the finding of disability based on [his] residual functional

16 capacity assessment." [Id. (citing AR at 149).] He argues that the ALJ's failure to make ths

17 finding "makes the error in failing to properly consider the opinions of Dr. Bijpuria material." [Id.

18 at 7-8.]

19      Defendant responds that the ALJ "reasonably" gave Dr. Bijpuria's opinion that plaintiff was

20 limited to light work "less weight based on the findings of the Stage [sic] agency reviewing

21 physicians initially and at reconsideration and the findings of the consultative examining physician,

22 all of which [sic] found Plaintiff could perform a range of medium work."[6] [Id. at 9 (citing AR at

23

24      [6]   The Court notes that on initial review, in addition to indicating "CLMT has MED RFC" [AR
at 261 (capitalization in original) (a notation written by Disability Adjudicator/Examiner (see id. at
25 274) "SJPRES DEA III")], the reviewing physician on initial review inexplicably also stated the
following: plaintiff cannot perform his past relevant work because he "has an RFC eroded to *light*
26 and is heavy" [AR at 262 (italics added)]; and, "[b]ased on the seven strength factors of the
physical RFC," plaintiff "demonstrates the maximum sustained work capability for . . . LIGHT" [id.
27 (capitalization in original).] Similarly, the reconsideration documents indicated the following: "[t]his
(continued...)
28

9

1   148-49, 260-61, 270-71, 538).] Defendant contends that the ALJ's determination was reasonable

2   for the same reasons stated by the ALJ -- "generally unremarkable clinical findings in the record,"

3   the "mild to moderate degenerative disc disease found in the imaging studies," and plaintiff's

4   "relatively routine and conservative course of treatment."[7]  [Id. at 9-10 (citing AR at 148).]  He

5   states that the opinions of the consultative examining physician, Dr. Ella-Tamayo, were supported

6   by substantial evidence, based on her "thorough physical examination," and her own clinical

7   findings.  [Id. at 10.]   Defendant asserts that the ALJ's determination to reject Dr. Bijpuria's

8   opinions "was further supported by the conclusions of the State agency reviewing physicians, who

9   concluded that Plaintiff could perform a slightly reduced range of medium work."  [Id. (citing AR

10  at 259-61, 270-71).]  He notes that the "Ninth Circuit has repeatedly held that reviewing physicians

11  are highly qualified experts whose opinions may provide a substantial basis for an ALJ's

12  conclusions."  [Id. (citing Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) for the proposition

13  that the "findings of a nontreating nonexamining physician can amount to substantial evidence,

14  so long as other evidence in the record supports those findings).]  Defendant notes the 2015

15  findings of the State agency reviewing physicians are "further supported by the clinical findings

16  and opinions of Dr. Ella-Tamayo and the other objective findings noted by the ALJ in the

17  decision."  [Id. at 11 (citing AR at 147-48).]   Defendant did not address plaintiff's argument

18

19

---

20  [6](...continued)

21  is a recon of a claimant denied at the initial level . . . with a *LIGHT* RFC. . . . I suggest affirmation
    of *LIGHT* RFC" [id. at 268 (italics added; capitalization in original) (a notation written by "Disability

22  Adjudicator/Examiner" "CPLAM, DEA III")]; "The prior assessment is affirmed as written" [id. at
    272]; claimant "has an RFC *eroded to light* but [past relevant work] is heavy; therefore, he is

23  unable" to perform his past relevant work [id. (italics added; capitalization omitted)]; and "[b]ased
    on the seven strength factors of the physical RFC," plaintiff "demonstrates the maximum

24  sustained work capability for . . . LIGHT." [Id. at 273 (capitalization in original).]  Thus, the 2015
    opinions of the reviewing consultants are themselves ambiguous and, because of that ambiguity,

25  arguably do not constitute substantial evidence supporting an RFC for *medium* work.  For
    purposes of this Order, the Court adopts the ALJ's conclusion that the reviewing consultants

26  found plaintiff capable of a range of medium work.

27

28  [7]    The Court notes that a lumbar spine MRI conducted in *2006* determined that plaintiff's
    degenerative disc changes at that time were "mild to moderate." [AR at 718-19.]

10

1   regarding the ALJ's failure to consider plaintiff's English literacy.[8]

2   At the time the State agency physicians and Dr. Ella-Tamayo conducted their assessments,

3   plaintiff's degenerative back condition arguably might have been determined to be mild-to-

4   moderate based on his treatment and the imaging studies done to that point.   Indeed, the imaging

5   records cited by the ALJ for this proposition were dated from October 2014 to November 2015,

6   and the records he cited as reflecting conservative treatment [id.] were dated prior to August 2015.

7   [AR at 147, 148.]  Dr. Bijpuria, however, had the benefit of -- and considered -- an additional two

8   years of medical records, including those submitted by plaintiff's pain management specialist, Dr.

9   Dominguez.[9]  Dr. Bijpuria determined that the records he reviewed -- which spanned from prior

10

11   [8]   The ALJ asked the VE to explain any conflict between plaintiff's English abilities (which he described in his hypothetical to the VE as "only understand and speak a few simple words . . . .

12   Is unable to read or write in English" [AR at 190]) and the language development level of 1 as indicated by the DOT for the positions suggested by the VE.  [Id. at 191.]  The VE explained that

13   the requirements of language development level 1 are "not intended to be a specific requirement to the occupation," and that in her experience the three jobs are able to be learned through visual

14   observation and watching someone else work.  [Id. at 192.]

15

16   [9]   With respect to Dr. Dominguez' treatment, the ALJ noted that August 2017 progress notes indicate that plaintiff "alleged being unable to stand for long hours due to his chronic back pain

17   . . . even though he reported a pain level of 2/10 at that visit."  [AR at 148 (citing id. at 676).]  The ALJ also referenced -- without citation -- an "undated examination report by Dr. Dominguez," that

18   reflected "positive straight leg raising on the left at 80 degrees and decreased sensation to pinprick over the L5-S1 distribution but Patrick test was negative and Dr. Dominguez himself was

19   uncertain as to the extent of the positive straight leg raising as he had two questions marks after that finding."  [Id.]  While the ALJ did not point to the specific record he referred to, the Court notes

20   that Dr. Dominguez' October 21, 2015, treatment record reflected these very findings -- absent any question marks.  [Id. at 623-24.]  In fact, that record -- which appears to reflect plaintiff's initial

21   visit with Dr. Dominguez -- also reflected pain radiating to both lower extremities; pain at least an 8 on a 10-point scale and, on average about 8/10; epidural steroid injections about five years in

22   the past; and prior treatment with morphine, codeine, and other medications.  [Id. at 623.]  Dr. Dominguez also noted that plaintiff used a cane as an assistive device, and observed that while

23   plaintiff's gait was good, his ambulation was "[t]ypical . . . due to pain."  [Id. at 623, 624.] Moreover, that initial report suggests a treatment plan to include, as permitted by plaintiff's

24   insurance, "pharmacological and nonpharmacological therapy, interventional modalities with epidural injection, facet joint injection, trigger point injections and/or advance[d] interventional

25   techniques[,] . . . acupuncture, transdermal analgesics and weight loss measures[,] . . . moderate or more potent opiate and/or nonopiods along with adjunctive therapy with anticonvulsants,

26   antidepressants and membrane stabilizing agents[,] . . . TENS [unit,] physical therapy[,] . . .

27   acupuncture[,] . . . and psychological evaluation for cognitive behavioral therapy as a non-

28                                                                                                                   (continued...)

1    to 2015 through his review in September 2017 -- reflected plaintiff's inability to perform medium

2    work.  And, as Dr. Bijpuria  noted, Dr. Ella-Tamayo's evaluation was a one-time evaluation, by a

3    non-treating physician who did not review *any* of plaintiff's medical records.

4           Additionally, the Court does not agree with the ALJ's finding that plaintiff's treatment was

5    conservative.   "Conservative  treatment"  has  been  characterized  by  the  Ninth  Circuit  as,  for

6    example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481

7    F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th

8    Cir. 2008) (holding that ALJ properly considered the plaintiff's use of "conservative treatment

9    including  physical  therapy  and  the  use  of  anti-inflammatory  medication,  a  transcutaneous

10   electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe

11   . . . any serious medical treatment for [a claimant's] supposedly excruciating pain."   Meanel v.

12   Apfel, 172 F.3d 1111, 1114 (9th Cir.1999).  Indeed, many courts have previously found that strong

13   narcotic pain medications and spinal epidural injections are not considered to be "conservative"

14   treatment.  See, e.g., Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's

15   finding that claimant received conservative treatment was not supported by substantial evidence

16   when claimant underwent physical therapy and epidural injections, and was treated with several

17   pain medications); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would

18   be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong

19   narcotic pain medications."); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16,

20   2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections,

21   and epidural injections as conservative); see also Childress v. Colvin, 2014 WL 4629593, at *12

22   (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [a prescribed narcotic]

23   is 'conservative' or in conflict with Plaintiff's pain testimony").

24          While plaintiff's treatment *arguably* may have been more conservative in 2015 at the time

25   _____

26        [9](...continued)
     pharmacological modality to help with [plaintiff's] chronic pain."  [Id. at 626-67.]  In short, there is
27   no support for the ALJ's determination that any "question marks" after plaintiff's positive straight
     leg raising results were indicative of Dr. Dominguez' alleged "uncertainty" about those results.
28

1  the reviewing consultants and Dr. Ella-Tamayo performed their evaluations, since that time he has

2  received treatment with pain management specialist Dr. Dominguez, who, despite treatment,

3  regularly noted plaintiff's constant pain, generally at a level of 6 on a 10-point scale with

4  medication (8-9/10 without medication), radiating to the bilateral lower extremities, and made

5  worse by increased activity and movement.  [See, e.g., AR at 608, 611, 614-15, 630.]  By way of

6  treatment, Dr. Dominguez generally followed his initial treatment plan for plaintiff and prescribed

7  narcotic medications, a TENS unit, acupuncture, and physical therapy, and administered a left

8  lumbar facet joint medial branch block at L4-L5 and L5-S1, as well as epidural steroid injections.

9  [See, e.g., id. at 608, 611, 614-15, 630.]  Plaintiff had also received epidural injections in 2011,

10  2014, and 2016.  [See id. at 147, 525, 554.]  Then, by May 2016, Dr. Dominguez was of the

11  opinion that plaintiff might need to undergo surgery for his back issues.  [Id. at 554 ("Consider

12  rhizotomy.  Discuss on next visit").]  The Court does not find the ALJ's determination that plaintiff's

13  treatment was conservative to be a specific and legitimate reason supported by substantial

14  evidence for rejecting Dr. Bijpuria's opinions.

15     The Court also rejects the ALJ's suggestion that the fact that a June 15, 2016, treatment

16  note indicated that plaintiff only took his pain medication as needed, and that he "still had about

17  another week" of medications remaining at the time of that visit, "suggests that his pain was not

18  as severe as alleged if he was able to forego taking his medications."  [Id. at 148.]  The problem

19  with this "logic" is that there is absolutely no indication as to how often in the month prior to the

20  June 15, 2016, visit plaintiff had taken his pain medication because it was "needed," or even when

21  it was that plaintiff had last filled that prescription.[10]  Under the circumstances herein, where the

22  _____

23     [10]   In fact, at plaintiff's previous treatment visit on May 11, 2016, Dr. Dominguez prescribed
   a 30-day supply of Norco, 2 pills a day.  [AR at 602.]  If plaintiff had about a 7-day supply left (or
24  14 pills) on June 15, 2016, then he averaged taking approximately 1.7 pills a day in the 35-day
   period between May 11, 2016, and June 15, 2016.  This is not suggestive that plaintiff was able
25  to "forego" his medications or that his pain was not as severe as alleged, especially in light of the
   fact that plaintiff also expressed concern about "taking too much medication."  [Id. at 554.]
26  Plaintiff also reported at the May 11, 2016, and June 15, 2016, treatment visits that his average
   pain level with "the current regimen," is 6/10, and that his pain level without the medication is 8-
27  9/10 and his "functionality decreases by approximately 70%."  [Id. at 551, 554.]  The lumbar facet
28                                                                                        (continued...)

1   medical records as a whole provide support for the fact that plaintiff's degenerative disc disease

2   progressively deteriorated over time, the Court finds that  plaintiff's longitudinal treatment was not

3   routine and conservative, and Dr. Bijpuria's opinions were supported by substantial evidence in

4   the record.[11]

5        For much the same reasons, the Court finds that the ALJ's determination that the 2015

6   opinions of the State agency reviewing physicians, and the consultative examination of Dr. Ella-

7   Tamayo, were supported by substantial evidence does not pass muster when plaintiff's entire

8   historical record is considered.  Indeed, Dr. Ella-Tamayo, who conducted a somewhat cursory

9

10

11   _____

12   [10](...continued)

13   injections he had received provided only temporary relief and, at the May 11, 2016, visit, Dr.
     Dominguez indicated "[c]onsider rhizotomy.  Discuss on next visit along with repeat CURES."  [Id.

14   (emphasis in original).]  At plaintiff's June 2016 visit, plaintiff stated that he wanted to wait on the
     surgery "since his pain is man[a]ged with the medications but at times increases."  [Id. at 551.]

15   As discussed elsewhere in this Order [see infra note 11], plaintiff eventually had back surgery in
     2018.

16

17   [11]   The Court notes that as reflected in treatment records submitted by plaintiff to the Appeals
     Council, on January 17, 2018 (just a little more than three months after Dr. Bijpuria's report), an

18   MRI of plaintiff's lumbar spine reflected the following:  (1) at L3-L4, a 4 mm diffusely bulging disc,
     slightly more prominent in the central portion of the disc, with bilateral foraminal narrowing, and

19   mild spinal stenosis with decrease of the bilateral canal from 12.6 to 9.3 mm; (2) at L4-L5, a 6 mm
     diffusely bulging disc, with bilateral foraminal narrowing, and "prominent spinal stenosis with

20   reduction in the AP diameter" of the spinal canal to 6.5 mm; and (3) at L5-S1, a 3 mm diffusely
     bulging disc, with bilateral foraminal narrowing, and no spinal stenosis. [AR at 38.]  Each of these

21   findings reflects a deterioration from plaintiff's November 2, 2015, MRI discussed herein.
     [Compare id. with id. at 785-86.]  An August 29, 2018, x-ray of plaintiff's lumbosacral spine

22   reflected "[m]arked loss of lordosis," and "marked degenerative disc," and further noted "[f]ailed
     nonsurgical management" -- also a deterioration from plaintiff's September 8, 2015, x-ray that

23   reflected only osteoarthritic spurring at L3 and L4, "most prominent at L4."  [Compare id. at 754,
     with id. at 46.]  Then, at the end of 2018, plaintiff underwent lumbar spinal fusion surgery.  [See

24   id. at 12-13, 20, 40, 44.]  The Appeals Council determined that the submitted evidence "does not
     relate to the period at issue," and, therefore, "does not affect the decision about whether you were

25   disabled beginning on or before February 28, 2018," the date of the ALJ's decision.  [Id. at 2.]
     Plaintiff did not contest the Appeals Council's determination.  Nevertheless, the Court notes that

26   these records clearly suggest that  plaintiff's degenerative disc condition deteriorated between

27   2015 and 2019 and that Dr. Bijpuria's September 29, 2017, report has the support of substantial

28   evidence.

internal medicine examination,[12] relied only on plaintiff for historical information and had "no medical records available for review," other than an August 24, 2015, lumbar spine x-ray that reflected spondylosis at L2 to L5, which she stated she "reviewed and considered" in her conclusion regrading plaintiff's functional limitations.  [Id. at 534-39.]

Given the nature of plaintiff's degenerative condition, and longitudinal treatment record, including the treatment he received from Dr. Dominguez, a pain management specialist, the reasons given by the ALJ for giving greater weight to the 2015 reviewing opinions and the opinion of the one-time consultative examiner -- i.e., that those opinions were more consistent with the objective findings in the record, that plaintiff's examination findings were "generally unremarkable," that plaintiff received conservative and routine treatment, and that plaintiff's degenerative disc disease reflected on the imaging studies was "mild to moderate" -- were not specific and legitimate reasons supported by substantial evidence when the entire record is considered as a whole.

The ALJ failed to consider the record as a whole and, therefore, failed to provide specific and legitimate reasons for rejecting the 2017 opinions of Dr. Bijpuria, who reviewed all of plaintiff's treatment records.  Remand is warranted on this issue.

**B.     SUBJECTIVE SYMPTOM TESTIMONY**

**1.     Legal Standard**

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[13] 16-3p went into

---

[12]   For instance,  Dr. Ella-Tamayo's complete musculoskeletal examination considered plaintiff's weight; gait; neck range of motion; joints of the upper extremities including range of motion; and joints of the lower extremities including range of motion.  [AR at 537-38.]  She noted with respect to her examination of plaintiff's back, that plaintiff had "[n]o significant difficulty getting on and off the examination table," his straight leg raising while supine was negative bilaterally, and his "[b]ack examination revealed alleged pain on flexion of 60/90 degrees."  [Id.]

[13]   "SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1    effect.  See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[14]  SSR 16-3p supersedes SSR 96-7p,

2    the previous policy governing the evaluation of subjective symptoms.  SSR 16-3p, 2017 WL

3    5180304, at *2.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from

4    our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing so,

5    we clarify that subjective symptom evaluation is not an examination of an individual's character[;]

6    [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation."  Id.;

7    Trevizo, 871 F.3d at 678 n.5.  Thus, the adjudicator "will not assess an individual's overall

8    character or truthfulness in the manner typically used during an adversarial court litigation.  The

9    focus of the evaluation of an individual's symptoms should not be to determine whether he or she

10   is a truthful person."  SSR 16-3p, 2017 WL 5180304, at *11.  The ALJ is instructed to "consider

11   all of the evidence in an individual's record," "to determine how symptoms limit ability to perform

12   work-related activities."  Id. at *2.  The Ninth Circuit also noted that SSR 16-3p "makes clear what

13   our precedent already required:  that assessments of an individual's testimony by an ALJ are

14   designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the

15   individual has a medically determinable impairment(s) that could reasonably be expected to

16   produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character

17   and apparent truthfulness.'"  Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

18        To determine the extent to which a claimant's symptom testimony must be credited, the

19   Ninth Circuit has "established a two-step analysis."  Trevizo, 871 F.3d at 678 (citing Garrison, 759

20   F.3d at 1014-15).  "First, the ALJ must determine whether the claimant has presented objective

21

22       [14]    SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017,
23   with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28,
     2016."  See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017);
24   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  Other than also updating "citations to reflect
     [other] revised regulations that became effective on March 27, 2017," the Administration stated
25   that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate
     statements regarding the intensity, persistence, and limiting effects of symptoms in disability
26   claims . . . ."  Id.  The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior
     precedent.  Trevizo, 871 F.3d at 678 n.5 (SSR 16-3p "makes clear what [Ninth Circuit] precedent
27   already required").  Thus, while SSR 16-3p eliminated the use of the term "credibility," case law
     using that term is still instructive in the Court's analysis.
28

1   medical evidence of an underlying impairment which could reasonably be expected to produce

2   the pain or other symptoms alleged."  Id. (quoting Garrison, 759 F.3d at 1014-15; Treichler v.

3   Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue,

4   504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted).  If the claimant meets the

5   first test, and the ALJ does not make a "finding of malingering based on affirmative evidence

6   thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate

7   the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which

8   [those] symptoms limit [her] . . . ability to perform work-related activities . . . ."  SSR 16-3p, 2017

9   WL 5180304, at *4.   In assessing the intensity and persistence of symptoms, the ALJ must

10  consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain

11  or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side

12  effects of medication taken to alleviate pain or other symptoms; treatment, other than medication

13  received for relief of pain or other symptoms; any other measures used to relieve pain or other

14  symptoms; and other factors concerning a claimant's functional limitations and restrictions due

15  to pain or other symptoms.  20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-

16  84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4  ("[The Commissioner] examine[s] the entire case

17  record, including the objective medical evidence; an individual's statements . . . ; statements and

18  other information provided by medical sources and other persons; and any other relevant

19  evidence in the individual's case record.").

20        Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ

21  did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective

22  symptom statements must be specific, clear and convincing.  Brown-Hunter v. Colvin, 806 F.3d

23  487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina

24  v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759

25  F.3d at 1014-15); Treichler, 775 F.3d at 1102.  "General findings [regarding a claimant's credibility]

26  are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

27  undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834)

28  (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow a reviewing

court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

       In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements."  SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014).  In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  Id.  "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner.  Id. at *9.  The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.  Id.

       Here, in discounting plaintiff's testimony, the ALJ found the following:  (1) plaintiff's subjective complaints were not supported by the objective evidence; (2) plaintiff's treatment was conservative; (3) plaintiff's pain decreased with his medications; (4) Dr. Dominguez expressed uncertainty "as to the extent of [plaintiff's] positive straight leg raising" test results; and (5) there are "no clinical signs of radiculopathy and no objective findings to support the use of a cane or other assistive device."  [AR at 147-48.]

### 2.   Discussion

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [JS at 16-20.]  Defendant refutes those arguments, generally relying on the ALJ's findings that plaintiff's subjective symptom complaints were not consistent with the medical evidence of record and that "three separate physicians in the record [concluded] that Plaintiff can perform a range of medium work"; plaintiff's treatment history, that "has been, at least in part, successful"; the fact that there is "no indication in the record that Plaintiff's condition was severe enough to require surgical intervention"; the fact that plaintiff reported that his medication decreased his pain and did not cause side effects; the fact that plaintiff wanted "to defer more aggressive treatment with a rhizotomy, because his pain was managed with medications"[15]; and because at one treatment visit, plaintiff "reported a pain level of only 2 out of 10, while asking his treating provider to complete his disability form."  [Id. at 20-23 (citing AR at 147-48, 260-62, 370-71, 538, 551, 676).]

The ALJ's reasons for discounting plaintiff's subjective symptom complaints are closely intertwined with the ALJ's findings with respect to plaintiff's first issue discussed herein (i.e., lack of consistency with the objective medical evidence; unremarkable clinical findings; plaintiff's routine and conservative treatment; picking and choosing from treatment records wherein plaintiff reported a lower degree of pain; the fact that plaintiff had remaining pain medication at the time of a doctor's visit; and an "undated" positive straight leg raising test punctuated by question marks).

For the same reasons discussed above, these findings fail to provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony.

Remand is warranted on this issue.

/

/

---

[15]   The fact that plaintiff wanted to defer surgery runs directly counter to defendant's statement that there was "no indication in the record that Plaintiff's condition was severe enough to require surgical intervention."  [See JS at 22, 23.]

# VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  Trevizo, 871 F.3d at 682 (citation omitted).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. (citing Garrison, 759 F.3d at 1019).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Bijpuria, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Bijpuria.  The ALJ must consider the entire longitudinal history of plaintiff's medical treatment and explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects.  Second, because the ALJ failed to provide specific, clear and convincing  reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Finally, the ALJ shall reassess plaintiff's RFC, including, if warranted, making a determination regarding plaintiff's ability to communicate in English/English literacy, and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers

in the national economy that plaintiff can still perform.[16]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  August __11__ , 2020

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[16]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff has no past relevant work.  [AR at 149.]